UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

:

MULTIBANK, INC.,                                    :

:

                                    Petitioner,     :          17 Civ. 3467 (KPF)

:

                      v.                            :          OPINION AND ORDER

:

ACCESS GLOBAL CAPITAL LLC,                          :

:

                                    Respondent.     :

:

------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: December 4, 2017

KATHERINE POLK FAILLA, District Judge:

Petitioner Multibank, Inc. ("Multibank") moves, pursuant to 28 U.S.C.
§ 1447(c), to remand this turnover proceeding to the New York State Supreme
Court, New York County. Multibank alleges that (i) judgment debtor Novel
Commodities S.A. ("Novel") fraudulently conveyed assets to Respondent Access
Global Capital LLC ("Access"); (ii) the turnover proceeding that Multibank
brought in state court under New York Civil Practice Law and Rules ("CPLR")
§ 5225(b), which proceeding Access removed to federal court, is ancillary to the
underlying litigation and therefore not removable; and (iii) Access lacked an
objectively reasonable basis for removal and, accordingly, should be required to
pay Multibank's attorney's fees.

Access concedes that ancillary proceedings generally are not removable
to federal court but contests Multibank's characterizations of the asset transfer
from Novel to Access as fraudulent and of the turnover proceeding as ancillary
to the underlying litigation. Access instead asserts that Novel transferred

assets to Access pursuant to a settlement agreement that disposed of a breach of contract claim that Access had brought against Novel in federal court. Access argues that Multibank's turnover proceeding is independent of the underlying litigation and is subject to removal under 28 U.S.C. § 1332.

As detailed in the remainder of this Opinion, the Court finds that Multibank has met its burden of pleading that Novel fraudulently conveyed assets to Access; that the turnover proceeding against Access is ancillary to the underlying litigation; and that the turnover proceeding is not removable to federal court. Accordingly, the Court grants Multibank's motion to remand. Because Access's removal action was not objectively unreasonable, however, the Court denies Multibank's request for attorney's fees.

**BACKGROUND**[1]

**A.    Factual Background**[2]

**1.    The Underlying Litigation:  Multibank's Suit Against Novel, Access, James Besch, and Global Commodities LLC**

On February 28, 2016, Multibank brought suit in New York State Supreme Court, New York County, against Access, a New Jersey limited

---

[1]    For ease of reference, the Court refers to the Notice of Removal as "Rem. Notice" (Dkt. #1); to Multibank's verified petition as "VP" (Dkt. #1-1); to Multibank's verified amended complaint as "VAC" (Dkt. #1-2); to the transfer agreement between Novel and Access as "Transf. Agmt." (Dkt. #1-4); to Multibank's motion to remand as "Pet. Br." (Dkt. #14); and to Access's memorandum of law in opposition to the motion to remand as "Resp. Opp." (Dkt. #20).

[2]    The Court draws these facts primarily from the VP and VAC. The Court treats those facts as true. *See Fed. Ins. Co.* v. *Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 391 (S.D.N.Y. 2006) ("[On] a motion to remand, the district court accepts as true all relevant allegations contained in the complaint and construes factual ambiguities in favor of the plaintiff." (citations omitted)). The Court also considered the declarations attached to the Notice of Removal. *See Arseneault* v. *Congoleum*, No. 01 Civ. 10657 (LMM), 2002

liability company; Global Commodities LLC ("Global"), a Delaware limited liability company; James Besch, Access's sole manager and Global's owner (together with Access and Global, the "Besch Defendants"); and Novel, a Swiss company trading in agricultural commodities. (VAC ¶¶ 10-13). The action concerned a forfaiting transaction in which Multibank purchased a $4.9 million account receivable from Novel in connection with a sale of beans to Cia Arrocera Covadonga S.A. de C.V. ("Covadonga"), a Mexican agricultural company. (VP ¶¶ 17-21). The relevant contract included a choice of law provision stating that it was to be "governed by and construed in accordance with the laws of the State of New York" and that the "[p]lace of jurisdiction is New York, USA." (VP ¶ 20). The contract gave Multibank the right to future payments by Covadonga or, in the event of default by Covadonga, the proceeds from a credit insurance policy that Novel had obtained with Access's assistance. (Pet. Br. 2-3).

The credit insurance policy covering Covadonga's obligations, issued by National Union Fire Insurance Company of Pittsburgh, Pennsylvania (a subsidiary of American International Group, or "AIG"), explicitly prohibited "round-trip" transactions — those where insureds purchase commodities from one entity and then resell the commodities to that same entity. (VAC ¶ 61). On February 11, 2011, Covadonga defaulted on its payment obligations to Multibank. (*Id.* at ¶ 5). Shortly thereafter, AIG denied coverage under the

---

WL 472256, at *6 (S.D.N.Y. Mar. 26, 2002) (finding that courts may consider "material outside of the pleadings" on a motion to remand).

relevant insurance policy. (*Id.*). At Multibank's request, Novel and Access commenced an arbitration proceeding in June 2012. (*Id.* at ¶ 94). On November 18, 2015, the arbitration panel denied coverage to Access, Novel, and Multibank, finding in relevant part that the sale of beans to Covadonga constituted a round-trip transaction: Covadonga sold the beans to Global, who sold them to Novel, who then resold them to Covadonga. (*Id.* at ¶¶ 116-17).

Multibank brought suit in state court against Novel and the Besch Defendants. It asserted the following claims: (i) breach of contract against Novel, Besch, and Access for failure to procure insurance coverage for Covadonga's default; (ii) breach of the implied covenant of good faith and fair dealing against Novel, Besch, and Access for implicitly promising that Covadonga was financially sound and able to honor its obligations; (iii) tortious interference against Global for structuring a round-trip transaction; (iv) fraud against Besch, Access, and Novel because they failed to inform Multibank that Covadonga was in severe financial distress; (v) negligent misrepresentation against Besch, Access, and Novel based on their failure to impart information about Covadonga's financial situation and their non-compliance with the AIG insurance policy; and (vi) breach of fiduciary duty against Besch and Access stemming from Besch's failure to ensure compliance with the AIG policy. (VAC ¶¶ 118-80)).

On July 28, 2016, after Novel failed to respond to the Complaint or request an extension, Multibank filed for a default judgment against Novel. (VP ¶¶ 32-33). On January 9, 2017, New York State Supreme Court Justice

Shirley Werner Kornreich granted Multibank's motion for default judgment in the amount of $6,015,234.68; judgment was entered on February 7, 2017. (*Id.* at ¶¶ 34-37).

### 2. The SDNY Litigation: Access's Suit Against Novel

In what appears to the Court to be a related action, Access filed a breach of contract claim in federal court on November 26, 2013, against Novel. *See Access Global Capital, LLC* v. *Novel Commodities, S.A.*, No. 13 Civ. 8492 (PGG). (VP ¶ 42). Access asserted that it had served as Novel's agent and arranged for American financial institutions to issue credit insurance policies to cover Novel's commodities trades. (*Id.* at ¶ 44). In its capacity as agent, Access purchased credit insurance policies on Novel's behalf with the understanding, based on an indemnification agreement that it had entered into with Novel, that Novel would fully reimburse Access for those expenses. (*Id.* at ¶¶ 48-49). Access alleged that Novel failed to reimburse Access for two insurance policy premiums and related expenses. (*Id.* at ¶ 49). It sought damages totaling $862,000. (*Id.*). Access and Novel settled the case and, on April 22, 2016, filed a Stipulation of Discontinuance, which the court endorsed on April 25, 2016. (*Id.* at ¶¶ 52-53). The parties did not disclose the terms of the settlement agreement to the court.

### 3. Novel's Transfer of Assets to Access

Also on April 22, 2016 — which, as it happens, was two and a half months after Multibank brought the underlying litigation and one month after Novel's default — Access and Novel entered into an Assignment of Claims and

5

Choses in Action through which Novel assigned to Access all claims it had submitted in connection with "the commercial insolvency proceeding underway against [Covadonga], which was filed with the Second District Court sitting in Naucalpan de Juarez[.]" (Transf. Agmt. 1-2). The transferred claims pertained to "over thirty unpaid promissory notes … corresponding to $12,108,710.39." (VP ¶ 69). As part of Covadonga's restructuring process, Covadonga's creditors — of which Novel was one — agreed to collect just 10 percent of their claims over a 7-year payment period. (*Id.* at ¶ 70). For this reason, Novel owned claims for future payments of approximately $1.2 million to $1.3 million. (*Id.*). Through the Assignment, Novel transferred its right to those claims to Access. (Transf. Agmt.).

The Assignment included two clauses stating that the transfer of assets from Novel to Access was made without valuable consideration. Clause One read, in relevant part:

> Pursuant to this Assignment, the Assignor hereby assigns to the Assignee *without valuable consideration* each and every chose in action and obligation or procedural burden arising out of or relating to the claims or judicial proceedings brought by the assignor … and the assignee hereby accepts such assignment and assumes the corresponding rights and obligations pursuant to the terms and conditions of this agreement[.]

(Transf. Agmt. 2 (emphasis added)). Clause Four of the Assignment is entitled, "Assignment Without Valuable Consideration," and states: "[T]he Assignor may not demand any consideration from the Assignee in connection with the assignment of claims hereunder." (*Id.* at 2-3).

6

### 4. Multibank's Turnover Proceeding Against Access

On April 27, 2017, Multibank filed a turnover proceeding pursuant to CPLR § 5225(b) against Access in the Supreme Court of the State of New York, County of New York, captioned *Multibank, Inc.* v. *Access Global Capital, LLC*, Index No. 652290/2017. Through the proceeding, Multibank sought "an order directing respondent, Access … to turn over and deliver to Multibank and/or the Sheriff all funds, property and assets belonging judgment debtor, Novel … that were fraudulently conveyed to and are now in Access's possession and custody." (VP ¶ 1).

Access argued that "[t]he Assignment needs to be set aside as a constructive and intentional fraudulent conveyance in violation of New York's Debtor & Creditor Law." (VAC ¶ 88). In support of its claim, Access noted that (i) the Besch Defendants had not been forthcoming in their responses to post-judgment disclosure requests, and in particular "did not disclose that Novel and Access had executed a stand-alone Assignment to transfer [the Covadonga claims] on April 22, 2016 and that the Assignment expressly provided that the transfer was made for no consideration" (*id.* at ¶ 76); (ii) the Besch Defendants "would not disclose the precise terms of [their] settlement" (*id.* at ¶ 77); (iii) the Assignment was dated two and a half months after Multibank brought suit against the Defendants and one month after Novel defaulted in the underlying litigation (*id.* at ¶ 78); (iv) the Assignment was made when Novel was in financial distress (*id.* at ¶ 80); (v) the Assignment explicitly and repeatedly stated that the transfer of assets was for no consideration (*id.* at

7

¶¶ 82, 86); and (vi) the Assignment "was made between two entities ... that enjoyed a longstanding relationship" (*id.* at ¶ 87).  Multibank concluded: "Novel's [Covadonga] Claims, including any payments made and the rights to any future payments, as well as any documents necessary to execute payment or delivery, should be turned over and delivered to Multibank and/or the Sheriff."  (*Id.* at ¶ 89).

## B.  Procedural Background

On May 9, 2017, Access filed a Notice of Removal pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 and Local Civil Rule 81.1.  (Rem. Notice).  Access asserted that removal was timely because it had filed the notice of removal within 30 days of its receipt of the Notice of Petition (*id.* at ¶ 4), and that venue was proper because the Supreme Court of the State of New York, County of New York, is located within the Southern District of New York (*id.* at ¶ 7).  Access claimed that, under 28 U.S.C. §§ 1332(a) and 1441(a), the Court could exercise diversity jurisdiction because (i) Multibank is a Panamanian corporation with its principal place of business in Panama while Access is a limited liability corporation organized under the laws of the State of New Jersey with its principal place of business in New Jersey (*id.* at ¶¶ 9-10); (ii) the amount in controversy — estimated between $1.2 million and $1.3 million — exceeds the sum of $75,000 (VP ¶ 5); and (iii) Respondent Access is not a citizen of the State in which the action was brought (Rem. Notice ¶ 12).

On May 26, 2017, Multibank filed a motion to remand the case to state court and a memorandum of law in support thereof.  (Dkt. #14, 15).  On

June 16, 2017, Access filed an affirmation and memorandum of law in opposition to Multibank's motion to remand. (Dkt. #19, 20). On June 22, 2017, Multibank filed a reply memorandum of law in further support of its motion to remand. (Dkt. #21).

## DISCUSSION

### A.    Applicable Law

#### 1.    Removal of Ancillary Proceedings

Under 28 U.S.C. § 1441(a), a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." For removal to be proper, the district court must exercise diversity jurisdiction or federal question jurisdiction. *Caterpillar Inc.* v. *Williams*, 482 U.S. 386 (1987). As relevant here, federal courts have diversity jurisdiction over cases between citizens of a State and citizens of a foreign state where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). But because federal courts are courts of limited jurisdiction, they "construe the removal statute narrowly, resolving any doubts against removability." *Somlyo* v. *J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1046 (2d Cir. 1991).

Courts in this Circuit have long held that parties may not remove cases that are ancillary to civil actions brought in state court. To be removable, an action must be independent from the underlying litigation. *See, e.g.*, *Fox & Horan* v. *Beiny*, No. 92 Civ. 2067 (LJF), 1992 WL 168261, at *1 (S.D.N.Y. June 29, 1992) ("[W]here the action sought to be removed first arose as a motion ... in a related proceeding, rather than as a separate complaint, the

party seeking removal must prove the existence of an action separate and independent from the related proceeding.").  As one court has explained:

> To be removable[, a claim] must be ... a separate and independent cause of action ... .  [P]roceedings which are ancillary to an action pending in a state court cannot be removed, since it would be both judicially unseemly and uneconomical to have a supplemental proceeding ... in a federal court when the principal claim is being litigated in the state court.

*Nowell* v. *Nowell*, 272 F. Supp. 298, 300-01 (D. Conn. 1967).  Similarly, in *People of the State of New York* v. *National Cancer Hospital of America*, the court rejected jurisdiction where "[t]he present application is merely ancillary [to the underlying litigation]."  153 F. Supp. 484, 485 (S.D.N.Y. 1956).

Those decisions align with the United States Supreme Court's decision in *First National Bank* v. *Turnbull & Co.*, 83 U.S. 190 (1872), a case involving a post-judgment claim by a creditor against a third party.  There, the Court noted:

> [W]e think [the proceeding] was merely auxiliary to the original action, a graft upon it, and not an independent and separate litigation.  A judgment had been recovered in the original suit, final process was levied upon the property in question to satisfy it ... and this proceeding, authorized by the laws of Virginia, was resorted to [so as] to settle the question whether the property ought to be so applied.  The contest could not have arisen but for the judgment and execution, and the satisfaction of the former would at once have extinguished the controversy between the parties.  The proceeding was necessarily instituted in the court where the judgment was rendered ....  It was intended to enable the court, the plaintiff in the original action, and the claimant, to reach the final and proper result by a process at once speedy, informal, and inexpensive.

*Id.* at 195.

## 2.     What Constitutes an Ancillary Cause of Action

Multibank's motion to remand implicates the question of how courts are to determine whether a cause of action is ancillary to underlying litigation. The Second Circuit has developed a test to determine whether garnishments or turnover proceedings are ancillary, on the one hand, or constitute independent actions, on the other. In *Epperson* v. *Entertainment Express Inc.*, the Court noted that the question of ancillary jurisdiction hinges on whether the action is one to "to collect a judgment" or "to establish liability on the part of a third party." 242 F.3d 100, 104 (2d Cir. 2001). The former is ancillary; the latter, independent. Courts in this District have long employed the same test. Indeed, in *Finn* v. *Rotating Valve Corp.*, the court held that where an action "is merely one to enforce [a judgment] in the principal suit," the action is "auxiliary and incidental to the main suit." 25 F. Supp. 206, 207 (S.D.N.Y. 1938).

Other Circuits have adopted substantially similar tests to distinguish between ancillary and independent actions. The Seventh Circuit has noted that "where the supplemental proceeding is not merely a mode of execution or relief, but where it, in fact, involves an independent controversy with some new and different party, it may be removed into the federal court." *Travelers Prop. Cas.* v. *Good*, 689 F.3d 714, 724 (7th Cir. 2012) (internal quotation marks omitted). The Eleventh Circuit has held that "actions are not ancillary and are instead independent civil actions when they are in effect suits involving a new party litigating the existence of a new liability." *Jackson-Platts* v. *Gen. Elec. Capital Corp.*, 727 F.3d 1127, 1134 (11th Cir. 2013) (internal quotations marks

omitted).  Under each test, the operative question is whether the action seeks to enforce an existing judgment, on the one hand, or to establish liability on a new party, on the other.

### 3.    Fraudulent Conveyances Subject to CPLR § 5225(b)

Under CPLR § 5225(b),[3] a judgment creditor may "commence a proceeding to order a third party to turn over the judgment debtors' assets." *Tire Eng'g & Distribution LLC* v. *Bank of China Ltd.*, 740 F.3d 108, 110 (2d Cir. 2014).  "The first section of Article 52 [of the CPLR] describes the assets that New York law has made subject to enforcement, and thus available to judgment creditors" seeking to enforce a judgment under CPLR § 5225(b). *Alliance Bond Fund, Inc.* v. *Grupo Mexicano De Desarrollo, S.A.*, 190 F.3d 16, 20 (2d Cir. 1999).  That section — CPLR § 5201(b) — provides that a judgment "may be enforced against any property which could be assigned or transferred, whether it consists of a present or future right or interest and whether or not it is vested, unless it is exempt from application to the satisfaction of the judgment."  CPLR § 5201(b).

In contrast to a plenary action, CPLR § 5225(b) provides "a procedural mechanism for attacking a fraudulent conveyance by a judgment debtor, colloquially known as 'turnover proceedings.'"  *Mitchell* v. *Lyons Prof. Servs.,*

---

[3]     The Court applies New York law in assessing Multibank's motion to remand.  Neither party has addressed the choice of law issue in its submissions.  This may be because the relevant contract clearly establishes that New York law applies.  Indeed, the Finance Facility Contract no. 3093, which Multibank and Novel executed on October 22, 2010, and upon which Multibank bases its claims against Novel in the underlying litigation, states that the contract "is governed by and construed in accordance with the laws of the State of New York."  (Dkt. #1-1 at ¶ 5.5).

*Inc.*, 109 F. Supp. 3d 555, 563 (E.D.N.Y. 2015).  As the Second Circuit has stated, CPLR § 5225(b) "creates a *procedural* mechanism by which judgment creditors can enforce a money judgment, rather than a new *substantive* right." *Mitchell* v. *Garrison Protective Servs., Inc.*, 819 F.3d 636, 640 (2d Cir. 2016) (internal citation omitted).  The procedure allows a judgment creditor to set aside fraudulent transfers by the judgment debtor.  "[T]he mere pendency of a money action against a person makes any gratuitous transfer of property by that person fraudulent against the plaintiff should the plaintiff win the case." David D. Siegel, *Practice Commentaries*, CPLR 5225:7 (McKinney 1997).

To prevail on a claim of fraudulent conveyance, a plaintiff "must establish [i] that the conveyance was made without fair consideration; [ii] that the conveyor is a defendant in an action for money damages or that a judgment in such action has been docketed against him; and [iii] that the defendant has failed to satisfy the judgment."  *Grace* v. *Bank Leumi Tr. Co. of N.Y.*, 443 F.3d 180, 188 (2d Cir. 2006).  Before a party may attack a conveyance as fraudulent, the party must have the status of creditor.  *See, e.g.*, *Martes* v. *USLIFE Corp.*, 927 F. Supp. 146, 148 (S.D.N.Y. 1996) (applying New York law) (concluding that plaintiff lacked standing to complain that a corporate parent's sale of stock involved a fraudulent conveyance, since the only entity that transferred anything was the parent and the plaintiff was not a creditor of the parent).  A party need not have the status of creditor at the time the conveyance was made.  Rather, "[a] conveyance made or obligation incurred without fair consideration, when the person making the conveyance or entering

13

into the obligation intends or believes that he or she will incur debts beyond his or her ability to pay as they mature, is fraudulent as to both present and future creditors[.]" 30 *N.Y. Jur. 2d Creditors' Rights* § 420. Likewise, "[a] conveyance made with actual intent to hinder, delay, or defraud creditors is fraudulent as to both present and future creditors." *Id.*

### 4. Criteria for Awarding Attorney's Fees on a Motion to Remand

Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin* v. *Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005); *see also Calabro* v. *Aniqa Halal Live Poultry Corp.*, 650 F.3d 163, 166 (2d Cir. 2011). The Second Circuit has held that a court should deny a request for attorney's fees unless a defendant's grounds for removal are clearly barred by established federal law. As the Court has stated: "[I]f clearly established law did not foreclose a defendant's basis for removal, then a district court should not award attorneys' fees, and district court decisions ... do not render the law clearly established." *Williams* v. *Int'l Gun-A-Rama*, 416 F. App'x 97, 99 (2d Cir. 2011) (summary order) (internal quotation marks and internal alteration omitted).

**B.     Analysis**

In its submissions to the Court, Access concedes that actions under

CPLR § 5225(b) are ancillary to the underlying litigation and that removal of

such actions are generally improper.  Access instead grounds its opposition to

Multibank's motion to remand in the view that the transfer of assets from Novel

to Access was not a fraudulent conveyance, but instead part of a bona fide

settlement agreement.  Despite Access's decision not to contest Multibank's

claim that turnover proceedings are ancillary and therefore not removable, for

sake of completeness this Court analyzes each issue in turn.

**1.     Multibank Has Met Its Burden in Pleading That Novel's Transfer of Assets to Access Constituted a Fraudulent Conveyance**

On a motion to remand, the Court "accepts as true all relevant

allegations contained in the complaint and construes factual ambiguities in

favor of the plaintiff." *Fed. Ins. Co.* v. *Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 391

(S.D.N.Y. 2006) (internal quotation marks omitted).  Where the plaintiff's

motion to remand rests on a claim of fraudulent conveyance, the plaintiff meets

its burden by showing that the conveyance was made without fair

consideration, that a judgment has been docketed against the conveyor, and

that the defendant has failed to satisfy the judgment.  *Grace*, 443 F.3d at 188.

Multibank's allegations suffice on all three fronts.

The Assignment Agreement expressly states that the transfer of assets

from Novel to Access was made without fair consideration.  The first clause of

the agreement reads, in relevant part:  "[T]he Assignor hereby assigns to the

Assignee *without valuable consideration* each and every chose in action and obligation or procedural burden arising out of or relating to the claims or judicial proceedings brought by the assignor[.]" (Transf. Agmt. 2 (emphasis added)). The fourth clause is entitled "Assignment Without Valuable Consideration." (*Id.*). It states: "The Assignor hereby assigns and the Assignee hereby accepts, the claims and related choses in action *without valuable consideration* in favor of the Assignee." (*Id.* (emphasis added)). The clause goes on to explain that "the Assignor may not demand any consideration from the Assignee in connection with the assignment of claims hereunder." (*Id.* at 2-3).

As Multibank notes, other "badges of fraud" support the contention that Novel's transfer of assets to Access was fraudulent. In *Wall Street Associates* v. *Brodsky*, 684 N.Y.S.2d 244, 247-48 (1st Dep't 1999), the Appellate Division explained that "badges of fraud" include: "a close relationship between the parties to the alleged fraudulent transaction; a questionable transfer not in the usual course of business; inadequacy of the consideration; the transferor's knowledge of the creditor's claim and the inability to pay it; and retention of control of the property by the transferor after the conveyance." Here, as Multibank alleges, the asset transfer was not conducted in the usual course of business and instead came at a time when Novel was under financial distress. In addition, Novel was aware both of Multibank's claim against it and that Novel would be unable to satisfy a potential judgment against it. The Besch Defendants were also less than forthcoming in answering questions about the litigation between Access and Novel and any settlement claims relating thereto.

16

Finally, Novel and Access shared a close business relationship, with Access serving as a financial advisor and agent to Novel.  Under New York law, these "badges of fraud" militate strongly in favor of a finding of fraudulent conveyance.  That is particularly true when — as in the instant action — the express terms of the assignment agreement indicate that assets were transferred for no consideration.

The second and third requirements for a prima facie showing of fraudulent conveyance — that a judgment has been docketed against the conveyor, and that the defendant has failed to satisfy the judgment — are easily met here.  It is undisputed that when Novel conveyed the relevant assets to Access, both Novel and Access were defendants in an action in which Novel had defaulted.  It is similarly undisputed that a default judgment was entered against Novel in the New York action on January 30, 2017, and that the judgment remains unsatisfied.

Access seeks to persuade the Court that the asset transfer was not a fraudulent conveyance, but instead was part of a settlement agreement that disposed of Access's breach of contract action against Novel in federal court. Access claims that the language in the Assignment Agreement indicating that Novel transferred assets for no consideration does not reflect the parties' intent and was only included to ensure that the agreement "would be accepted by the Mexican bankruptcy court." (Resp. Opp. ¶ 19).  In other words, Access asks this Court to look beyond the plain language of the transfer agreement and to conclude — in contravention of that language and with no supporting

17

documentation — that the transfer of assets constituted part of a settlement agreement.

This the Court cannot do.  Under New York law, "[t]he cardinal principle for the construction and interpretation of [] contracts … is that the intentions of the parties should control." *SR Intern. Bus. Ins. Co.* v. *World Trade Ctr. Props., LLC*, 467 F.3d 107, 125 (2d Cir. 2006) (internal quotation marks omitted).  The parties' intent, in turn, is ascertained according to the plain language of the parties' agreement.  *See, e.g.*, *Greenfield* v. *Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002) ("The best evidence of what parties to a written agreement intend is what they say in their writing." (internal quotation marks omitted)).  A court will only look beyond the four corners of the agreement if it must do so to resolve ambiguities.  *See, e.g.*, *Muze, Inc.* v. *Digital On-Demand, Inc.*, 123 F. Supp. 2d 118, 128 n.9 (S.D.N.Y. 2000).  Here, the plain language of the contract is unambiguous:  It repeatedly states, in no uncertain terms, that Novel transferred assets to Access for no consideration.  For this reason, the Court declines Access's suggestion that it should look beyond the four corners of the agreement.  Even if the Court did, it would not credit Access's suggestion that the assets were transferred as part of a settlement agreement, where Access has provided no documentary evidence to support that claim.

### 2. The Turnover Proceeding Is Ancillary to the Plenary Action and Therefore Not Removable

The Court next assesses whether Multibank's turnover proceeding against Access constitutes an ancillary claim.  Courts in this District that have addressed the issue have consistently held that actions to collect judgments

18

constitute ancillary proceedings.  For example, in *Finn*, 25 F. Supp. at 206, the court held that the garnishment proceeding at issue, which was similar to the one here, was ancillary to the underlying action.  It noted that "[t]he action which was removed to this court is merely one to enforce the attachment taken out in the principal suit" and that "[t]he suit in aid of attachment is merely auxiliary and incidental to the main suit."  *Id.* at 207.  More recently, sister courts in this District have specifically found that turnover proceedings are ancillary to underlying litigation.  *See, e.g.*, *Fox* v. *Koplik (In re Perry H. Koplik & Sons, Inc.)*, No. 15 Civ. 4002 (KBF), 2015 WL 4601134, at *3 (S.D.N.Y. July 31, 2015) (finding fraudulent conveyance claim ancillary to the underlying litigation); *UFCW Local 174 Commercial Health Care Fund* v. *Homestead Meadows Foods Corp.*, 425 F. Supp. 2d 392 (S.D.N.Y. 2005) (same).

Like its sister courts, this Court finds that a turnover proceeding — here, by Multibank against Access — is ancillary to the underlying litigation.  Multibank seeks merely to enforce an existing judgment against Novel.  Nothing in Multibank's submissions suggests that it seeks to establish liability on a new party.  That Multibank chose to bring this action under CPLR § 5225(b) is itself significant and further supports the conclusion that the proceeding is ancillary.  As the Second Circuit has noted, CPLR § 5225(b) "creates a *procedural* mechanism by which judgment creditors can enforce a money judgment, rather than a new *substantive* right."  *Garrison Protective Servs., Inc.*, 819 F.3d at 640 (internal citation omitted).  Such a proceeding does not afford Multibank the ability to impose new liability on third parties,

even if it wished to do so.  On this record, the Court is unable to find — as Access urges it to do — that Multibank's turnover proceeding is independent from the underlying litigation.

Because Multibank's turnover proceeding against Access is ancillary to the underlying state court action, removal is improper.  This proceeding is part of the same controversy that was at the heart of the underlying state proceeding.  In the underlying action, Multibank won a default judgment against Novel; here, it seeks merely to collect on that judgment.  This is not an "independent controversy" and, for that reason, must be remanded to state court.  *See, e.g.*, *Nat. Cancer Hosp. of Am.*, 153 F. Supp. at 485 (finding no jurisdiction where "[t]he present application is merely ancillary [to the underlying litigation]"); *Nowell*, 272 F. Supp. at 300 ("[t]o be removable[, a claim] must be … a separate and independent cause of action").[4]

### 3.     Respondent Had a Reasonable Basis for Removal, and Attorney's Fees Are Therefore Unwarranted

Courts may only award attorney's fees on a motion to remand where the removing party "lacked an objectively reasonable basis for seeking removal." *Martin*, 546 U.S. at 141.  The Second Circuit has framed the operative question as whether the defendant's grounds for removal were clearly barred by federal

---

[4]     Access argues — without citing any cases or other authority on point — that settlement funds may not be targeted in turnover proceedings under CPLR § 5225(b).  New York courts have, in fact, held to the contrary.  *See, e.g.*, *Centerpointe Corp. Park P'ship 350 v. MONY*, 946 N.Y.S.2d 354, 355-56 (4th Dep't 2012) (judgment creditor entitled to turnover of proceeds of judgment debtor's settlement with respondent); *Bartels & Feureisen, LLP v. Geico Ins. Agency, Inc.*, 15 N.Y.S.3d 410, 411 (2d Dep't 2015) (same).  This Court sees no reason to depart from the New York courts' rulings, particularly where Access has produced no support for its assertion that settlement funds are not subject to turnover proceedings.

law.  *Williams*, 416 F. App'x at 99.  Here, the Court finds that Access had a reasonable basis for removal, such that an award of attorney's fees would be improper.

There is no question that the present action meets the requirements for removal and diversity jurisdiction under 28 U.S.C. §§ 1332 and 1441.  There is complete diversity among the parties, the amount in controversy exceeds $75,000, and Access does not reside in New York.  Multibank's basis for remand lies in its claim that turnover proceedings under CPLR § 5225(b) are ancillary to the underlying litigation.  Access has articulated a plausible — if ultimately unpersuasive — argument that Novel's transfer of assets to Access was not a fraudulent conveyance and, as such, not subject to CPLR § 5225(b).  The fact that Access has failed to substantiate that claim does not mean that Access lacked a reasonable basis for it.

More to the point, this Court cannot find — as it would need to do under controlling Second Circuit precedent, *Williams*, 416 F. App'x at 99 — that Respondent's grounds for removal were clearly barred by federal law.  The distinction between ancillary suits and independent actions does not lend itself to easily-applied formulas.  And although the Second Circuit has set forth a general test to distinguish ancillary claims from independent actions, it has yet to address the specific question presented here — whether turnover proceedings under CPLR § 5225(b) are ancillary to the underlying state court litigation.

For these reasons, on the record before it, the Court cannot hold that Access's removal of the turnover proceeding was objectively unreasonable or clearly barred by federal law. The Court therefore denies Petitioner's request for attorney's fees.

## CONCLUSION

For the reasons stated above, Petitioner's motion to remand this case back to New York State Supreme Court is GRANTED. Petitioner's request for attorney's fees is DENIED. The Clerk of Court is directed to terminate any pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:     December 4, 2017
           New York, New York

_____
          KATHERINE POLK FAILLA
          United States District Judge